UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN DICKIE,

      Applicant,

v.                            CASE NO. 8:20-cv-1995-SDM-LSG

SECRETARY, Department of Corrections,

      Respondent.

_____/

## **ORDER**

Dickie applies under 28 U.S.C. § 2254 for a writ of habeas corpus (Doc. 26) and challenges his convictions for possession of child pornography, for which Dickie is imprisoned for thirty-three years.  Numerous exhibits support the response and the supplemental response.  (Docs. 13 and 28)  The respondent argues that some grounds are unexhausted and procedurally barred.  (Doc. 11 at 23–29)

## I.  **BACKGROUND**[1]

Dickie pleaded no contest to thirty counts of possession of child pornography. (Doc. 13-2 at 816)  An arrest affidavit demonstrated a factual basis for the plea (Doc. 13-2 at 10–11):

> Computer Forensics Detective McHenry used internet tools designed for the use of Internet Crimes Against Children [ ] to determine that IP address 174.58.42.2 was used to download 504 files that contained hash values, which were previously identified as containers of child pornographic images [and] videos between the dates of August 5, 2013, and April 28, 2014.

---

[1] This summary of the facts derives from an arrest affidavit. (Doc. 13-2 at 10–11)

Detective McHenry used investigative resources to download a random sample of eighty-seven image files and forty-six video files with hash values matching the ones downloaded by IP address 174.58.42.2. These images [and] videos were reviewed and fifty-seven images were determined to have been images of child pornography (of which fifteen images depicted acts of sexual battery [or] bestiality on a child) and thirty-six videos were determined to have been videos of child pornography (of which twenty-three videos depicted acts of sexual battery [or] bestiality on a child).

Through legal process and covert surveillance it was learned that the defendant, John Dickie, lived at 4036 Crockers Lake Boulevard, Apartment 926, Sarasota, Florida, and that he was likely the sole resident of that address. It was also learned that Dickie was leased IP address 174.58.42.2 by Comcast for internet access and that there were no open Wi-Fi connections that were related to that IP address.

On July 9, 2014, a search warrant was executed at 4036 Crockers Lake Boulevard, Apartment 926, Sarasota, Florida. Detective McHenry conducted a preliminary computer forensic scan of Dickie's computer and obtained a sample of sixty-three images that depicted children involved in oral sex[,] masturbation[, or] vaginal sex[, or] the focus of the image was on the child's genital area in a lewd manner. The children depicted were determined to be less than eighteen years of age due to their childlike-sized arms, legs, [and] torsos, lack of breast development, [and] pre-pubescent state. Many of the image file titles include the term "PTHC" (pre-teen hardcore), [and] the age of the person depicted in the image (*i.e.*, 7yo, 9yo, 11yo, 13yo, *etc.*). A comprehensive exam has not yet been completed, and it is expected that many more images [and] videos will be discovered.

I conducted a post-*Miranda* audio recorded interview with John Dickie. During the interview, Dickie admitted to downloading child pornography from a file sharing program for the past year. Dickie admitted to searching for the child pornography by using search term "PTHC," which he described as meaning "pre-teen hardcore." Dickie admitted to being the sole person to utilize the laptop computer in his apartment, his Wi-Fi connection was password protected, and he was the only person living in the apartment. Dickie admitted to having viewed child pornography involving children as young as seven [ ]. Dickie said that he downloaded the child pornography for

masturbatory purposes. Dickie admitted to viewing the child pornography as recently as yesterday, July 8, 2014. Dickie admitted to knowing what he did was wrong.

## II. <u>TIMELINESS</u>

### <u>Ground Seven:</u>

Dickie asserts that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose documents that demonstrated that the offenses occurred between August 25, 2013, and February 5, 2014. (Docs. 26 at 15 and 29 at 10–13) The respondent argues that ground seven is time-barred. (Doc. 27 at 6–9) For judicial economy, review will proceed to the merits. *Day v. McDonough*, 547 U.S. 198, 205 (2006) (explaining that a defense based on the statute of limitations is not jurisdictional); *White v. Steele*, 853 F.3d 486, 490 (8th Cir. 2017) ("[E]ven where we have reason to doubt compliance with the statute of limitations, we may proceed to the merits in the interest of judicial economy.").

## III. <u>EXHAUSTION AND PROCEDURAL DEFAULT</u>

### <u>Ground Two, Ground Three, Ground Four, Ground Five, and Ground Six:</u>

In ground two Dickie asserts that trial counsel deficiently performed by failing to impeach a detective who testified at sentencing. (Doc. 26 at 7) In ground three Dickie asserts that trial counsel deficiently performed by failing to object during sentencing to statements by the prosecutor about the nature of the offenses. (Doc. 26 at 8) In ground four Dickie asserts that trial counsel deficiently performed by failing to object to false statements in a sentencing memorandum filed by the prosecutor. (Doc. 26 at 10) In ground five Dickie asserts that trial counsel deficiently performed

by failing to object to a subpoena that the prosecutor served on an internet service provider.  (Docs. 26 at 12)  In ground six Dickie asserts that the prosecutor violated his federal right to due process by failing to correct false testimony by the detective at sentencing.  (Doc. 26 at 13)

The respondent argues that ground two, ground three, ground four, ground five, and ground six are procedurally barred from federal review because Dickie failed to exhaust the claims.  (Doc. 11 at 23–29)

"[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (citing *Henry*, 513 U.S. at 365–66).

Dickie raised the claims in ground two, ground three, ground four, ground five, and ground six in his motion for post-conviction relief (Doc. 13-2 at 725–46) but failed to raise the claims in his brief on post-conviction appeal.  (Doc. 13-2 at 1400–35)  Because Dickie did not "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," he failed to exhaust his remedies in state court.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If Dickie returns to state court to exhaust his remedies, the post-conviction court will dismiss the claims as untimely and successive. Fla. R. Crim. P. 3.850(b), (h). Consequently, the claims are procedurally defaulted on federal habeas. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998).

Ground two, ground three, ground four, ground five, and ground six are barred from federal review absent a showing of either "actual cause and prejudice" or a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Dickie contends that appellate counsel deficiently performed by failing to raise the claims on post-conviction appeal and asserts that appellate counsel's deficient performance serves as cause to excuse the procedural default. (Doc. 16 at 15–17) *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, . . . counsel in that proceeding was ineffective." However, *Martinez* does not apply to a claim defaulted on state post-conviction appeal. *Lambrix v. Sec'y, Fla. Dep't Corrs.*, 756 F.3d 1246, 1260 (11th Cir. 2014) ("Importantly, the *Martinez* rule is expressly limited to attorney errors in initial-review collateral proceedings: '[T]he holding in [*Martinez*] does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.'") (quoting *Martinez*, 566 U.S. at 16).

Consequently, ground two, ground three, ground four, ground five, and ground six are procedurally barred from federal review.

**Ground Seven:**

Dickie asserts that the prosecutor violated *Brady* by failing to disclose documents that demonstrated that the offenses occurred between August 25, 2013, and February 5, 2014. (Docs. 26 at 15 and 29 at 10–13)  The respondent argues that the claim is procedurally barred because the post-conviction court dismissed the claim on a state procedural ground. (Doc. 27 at 12)  For judicial economy, review will proceed to the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (citing 28 U.S.C. § 2254(b)(2)). *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past.").

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 governs this proceeding. *Wilcox v. Fla. Dep't Corrs.*, 158 F.3d 1209, 1210 (11th Cir. 1998).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential

standard:

> In sum, § 2254(d)(1) places a new constraint on the power of
> a federal habeas court to grant a state prisoner's application for
> a writ of habeas corpus with respect to claims adjudicated on
> the merits in state court. . . . Under the "contrary to" clause,
> a federal habeas court may grant the writ if the state court
> arrives at a conclusion opposite to that reached by this Court on
> a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable
> facts. Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the
> correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's
> case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*,

562 U.S. 86, 103 (2011). The phrase "clearly established Federal law" encompasses

only the holdings of the United States Supreme Court "as of the time of the relevant

state-court decision." *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 694. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues an explanatory and reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 584 U.S. at 125. A respondent may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 584 U.S. at 125–26.

In a *per curiam* decision without a written opinion the state appellate court affirmed the denial of Dickie's Rule 3.850 motion for post-conviction relief. (Doc. 13-2 at 1454) A state appellate court's *per curiam* decision without a written

opinion warrants deference under Section 2254(d)(1). *Wright v. Sec'y, Dep't Corrs.*, 278 F.3d 1245, 1254 (11th Cir. 2002). *Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Dickie bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001). Dickie's federal application presents the same grounds that he presented to the state court. The state court's rejection of Dickie's claims warrants deference in this federal action. (Docs. 12-2 at 1133–37)

## IV. <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Dickie claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,
>
>> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's
conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances,
the identified acts or omissions were outside the wide range of professionally
competent assistance." 466 U.S. at 690.

Dickie must demonstrate that counsel's alleged error prejudiced the defense
because "[a]n error by counsel, even if professionally unreasonable, does not warrant
setting aside the judgment of a criminal proceeding if the error had no effect on the
judgment." *Strickland*, 466 U.S. at 691. To meet this burden, Dickie must show
"a reasonable probability that, but for counsel's unprofessional errors, the result of
the proceeding would have been different. A reasonable probability is a probability
sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Dickie cannot meet his burden by showing that the avenue chosen by counsel
proved unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).
*Strickland* cautions that "strategic choices made after thorough investigation of law
and facts relevant to plausible options are virtually unchallengeable; and strategic
choices made after less than complete investigation are reasonable precisely to the
extent that reasonable professional judgments support the limitations on
investigation." *Strickland*, 466 U.S. at 690–91.

Sustaining a claim of ineffective assistance of counsel under Section 2254(d)
is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both
'highly deferential,' and when the two apply in tandem, review is 'doubly' so."
*Richter*, 562 U.S. at 105. *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303

(11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

In denying Dickie's Rule 3.850 motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Doc. 13-2 at 1132–33)  Because the state court rejected the grounds based on *Strickland*, Dickie cannot meet the "contrary to" test in Section 2254(d)(1).  Dickie instead must show that the state court either unreasonably applied *Strickland* or unreasonably determined a fact.  In determining "reasonableness," Section 2254(d) authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" and not independently assessing whether counsel's actions were reasonable.  *Putman v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001).  The presumption of correctness and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

**A.  <u>Ground of IAC Before Plea</u>**

**<u>Ground One:</u>**

Dickie asserts that trial counsel deficiently performed by not advising him that entering a plea waived his right to appeal.  (Doc. 26 at 5)  The post-conviction court denied the claim as follows (Doc. 13-2 at 1133–37) (footnotes with state court record citations omitted):

Evidence that a defendant chose to enter a plea based on counsel's misadvice that an issue was preserved for appeal can provide cause for granting post-conviction relief under *Strickland*, *supra*. *See Anderson v. State*, 183 So. 3d 1146, 1148 (Fla. 5th DCA 2015); *Hawley v. State*, 822 So. 2d 552, 553 (Fla. 1st DCA 2002) (*per curiam*); *Helms v. State*, 573 So. 2d 116, 116 (Fla. 2d DCA 1991) (*per curiam*). It is immaterial whether the pre-trial motion would have, in fact, been dispositive, because it is a defendant's understanding, based upon counsel's advice, that is the focus of the claim, and not whether the motion could have been successfully appealed.
*See Shade v. State*, 59 So. 3d 1214, 1215–16 (Fla. 5th DCA 2011) (finding defendant's post-conviction claim was facially sufficient even if defendant's suppression motion was not dispositive, and thus, not appealable).

Having considered all of the evidence presented at the hearing, the court finds that Defendant has failed to demonstrate that his attorneys misled him into believing he could appeal the trial court's order on his suppression motion, filed March 23, 2015, and that, had he known he could not appeal, he would not have entered a plea and would have proceeded to trial.

[Trial counsel] said that she prepared and filed the suppression motion with Defendant's consent, and that she discussed the motion with him prior to filing it. She explained that if the statements and confession were thrown out, the State still had enough evidence to proceed to trial, and she used the word "dispositive." While Defendant denied this, the court finds incredible Defendant's contention that [trial counsel] did not discuss any of the additional evidence against him that was unrelated to his confession. [Trial counsel's supervisor] testified to Defendant's close involvement in the case, and how Defendant went through all of the discovery documents. Defendant, in fact, claimed that it was he, and not counsel, who discovered the vague verbiage in Detective McHenry's search warrant affidavit. That Defendant made such a meticulous inspection of the discovery stands in stark contrast to his contention that he remained unaware of any evidence against him beyond his own statements to law enforcement that could have been used at trial.

Even assuming, however, that Defendant was initially confused as to what evidence could be admitted against him should his suppression motion be denied, he could not have remained so uninformed at the time he entered his plea. [Trial counsel's supervisor] testified that he explained to Defendant they had to

proceed to trial in order to appeal the suppression order.
Defendant said he did not want to go to trial. The court
accredits this testimony. Moreover, [trial counsel's] error in
advising Defendant that he could take an interlocutory appeal
from the suppression order prior to entering a plea, if he was
willing to remain incarcerated until the appeal was adjudicated,
does not alter the court's conclusion. Defendant never said that
he wanted to pursue this route, or that he entered his plea in
reliance on this erroneous information.

Defendant also appears to have signed a statement, dated
March 25, 2015, acknowledging his understanding that, if he
entered a plea to the charges, the suppression order would "not
be appealable as it [was] not dispositive to [his] case." The
court considers this as evidence of Defendant's understanding
that he could not appeal the suppression motion, despite
post-conviction counsel's characterization of the statement as
"negative evidence" offered only in support of Defendant's
testimony that he did not sign the statement. Counsel's
characterization of this statement as only negative evidence that
Defendant did not sign the statement, since Defendant
denied signing it, is inapt. Negative evidence is proof that a fact
did not exist or that an alleged occurrence did not happen.
*See, e.g.*, *Powell v. Gary*, 200 So. 854 (Fla. 1941) (characterizing
as negative evidence testimony of witnesses who said they
never heard train whistle or bell ringing before accident); *Lewis
v. Sun Time Corp.*, 47 So. 3d 872 (Fla. 3d DCA 2010) (finding
trial court did not err in admitting negative evidence that no
similar slip and fall had occurred on unaltered hotel steps
during prior seventy years). The acknowledgment form, in
contrast, is evidence that Defendant did sign the statement.

[Trial counsel] and [her supervisor] testified that the
acknowledgment was prepared by them in light of Defendant's
decision to reject the State's plea offer and enter an open plea,
and that Defendant signed it in [trial counsel's] presence.
[Trial counsel's supervisor] said that the acknowledgment was
the type of document he routinely prepared in cases involving
similar circumstances. The court accredits this testimony, and it
is corroborated by the Acknowledgement and Waiver of Rights
form, signed by Defendant, which advises that by entering his
plea, Defendant was giving up his right to appeal "all matters
relating to the court's judgment." [Trial counsel] testified that
she went over this form with Defendant before he signed it,
including the waiver provision, and that, while he was upset
with the circumstances, he still wanted to go forward with the
open plea. Consequently, the court finds that [trial counsel's]

and [her supervisor's] performance did not fall [below]
prevailing constitutional standards. *Compare with Anderson v.
State*, 183 So. 3d 1146 (Fla. 5th DCA 2015) (finding counsel's
performance was deficient where there was uncontradicted
evidence that counsel erroneously advised defendant that he
could appeal trial court's competency finding after entering plea
to charges); *Odegaard v. State*, 137 So. 3d 505 (Fla. 2d DCA
2014) (finding counsel's performance was deficient where there
was undisputed evidence that counsel failed to advise defendant
of a possible forty-five-year sentence).

Finally, the fact that Defendant rejected both of the State's plea
offers strongly weighs against finding prejudice, even assuming
that counsels' performance was deficient. Both State offers —
the first for twenty years, and the second for eighteen years —
were for downward departure sentences that were significantly
lower than the 397-month (33.08-year) minimum sentence
required under the guidelines. That Defendant would have
forgone these plea offers, and then risked receiving a
significantly higher sentence if convicted after trial, is
improbable at best. This conclusion is further supported by
Defendant's hearing testimony. Defendant stated that, but for
counsels' misadvice, he would not have entered the open plea;
Defendant never averred that he would have gone to trial. That
Defendant may now wish he had accepted the State's
negotiated plea offer rather than enter the open plea, the court
has little doubt, but Defendant must show he would have gone
to trial to succeed on this claim. *See Zanchez v. State*, 84 So. 3d
466, 469 (Fla. 2d DCA 2012). This is because Defendant has no
right to reclaim the State's prior plea offer; even if he was
permitted to withdraw his plea, the State would be under no
obligation to make the same, or any, plea offer to him.
*See Odegaard*, 137 So. 3d at 508–09.

The post-conviction court determined that trial counsel and her supervisor

testified more credibly than Dickie at the evidentiary hearing (Doc. 13-2 at 1134–36),

and a state court's determination of credibility receives deference in federal court.

*Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016) ("Determining

the credibility of witnesses is the province and function of the state courts, not a

federal court engaging in habeas review.  Federal habeas courts have no license to

redetermine credibility of witnesses whose demeanor has been observed by the state

trial court, but not by them.") (citation and internal quotations omitted).

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty

pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58

(1985). "Where [ ] a defendant is represented by counsel during the plea process and

enters his plea upon the advice of counsel, the voluntariness of the plea depends on

whether counsel's advice 'was within the range of competence demanded of

attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*,

397 U.S. 759, 771 (1970)). "[I]n order to satisfy the 'prejudice' requirement, the

defendant must show that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill*, 474 U.S. at 59.

At the evidentiary hearing, trial counsel testified that she drafted a motion to

suppress statements by Dickie to a detective during an interrogation. (Doc. 13-2

at 1357) Before filing the motion, trial counsel explained to Dickie that, even if the

motion to suppress succeeded and the trial judge suppressed Dickie's statements,

other evidence proved Dickie's guilt. (Doc. 13-2 at 1357) After the trial judge

denied-in-part the motion to suppress, trial counsel advised Dickie that he could

appeal the order and ask the trial judge to stay the criminal case during the appeal.

(Doc. 13-2 at 1358)

Dickie rejected the prosecutor's plea offer of eighteen years in prison and

instead entered the plea without an agreement. (Doc. 13-2 at 1121, 1358–59) Before

Dickie entered the plea, trial counsel presented to Dickie a letter (Doc. 13-2

at 1359) that explained both the terms of the prosecutor's offer and the consequences

of rejecting the offer (Doc. 13-2 at 1121):

> This will acknowledge that I have been informed that if I decide
> to enter a plea to the charges in this case, the order denying the
> motion to suppress my statements in this case will not be
> appealable as it is not dispositive to my case (*i.e.*, if the motion
> was granted, the State could still go forward with the
> prosecution but without my statements being used as evidence).
> I also understand that the State is offering eighteen years [of]
> prison in this case, and my attorneys have explained to me it is
> likely the judge will sentence me to substantially more than
> eighteen years, up to the maximum of 37.5 years[2], if I plea[d]
> open (*i.e.*, allowing the judge to determine the sentence). It is
> also understood that the mandatory guideline sentence is
> substantially more than the eighteen years [of] prison, which is
> 33.083 years according to my lawyers' estimation. I understand
> that the judge can go under the mandatory guideline sentence if
> he determines a reason under the law to do so. Having fully
> understood the risks involved in an open plea to the judge,
> I wish to proceed with an open plea and give the judge
> authority to determine my sentence after hearing evidence of
> mitigation.

Trial counsel reviewed the letter with Dickie, and Dickie signed the letter.

(Doc. 13-2 at 1358–59, 1361–63)

Also, before Dickie entered his plea, trial counsel reviewed with Dickie a form

titled Acknowledgement and Waiver of Rights (Doc. 13-2 at 1363) that listed rights

that Dickie waived by entering the plea, including his right to appeal (Doc. 13-2

at 185):

---

[2] The information (Doc. 13-2 at 46–54) charged Dickie with thirty counts of possession of
child pornography, a second-degree felony, punishable by fifteen years in prison. §§ 775.0847(2) and
827.071(5), Fla. Stat. Consequently, Dickie faced four-hundred-fifty years in prison. Before
accepting Dickie's plea, the trial judge informed Dickie of the statutory maximum sentence.
(Doc. 13-2 at 185, 279)

> I understand that by pleading guilty or no contest, unless I expressly reserve the right to appeal a prior ruling of the court, I give up the right to appeal all matters relating to the court's judgment, including my guilt or innocence. I am also giving up the right to have motions filed, witnesses interviewed, and the right to present any defenses I may have to the charges.

Dickie signed the form and told trial counsel after reviewing the form that he wanted to enter the plea. (Doc. 13-2 at 1364–65)

At the plea hearing, Dickie stated under oath that he understood that he waived the rights listed on the form by entering the plea (Doc. 13-2 at 279):

| | |
|---|---|
| [Judge:] | Mr. Dickie, I'm holding up a document for you to see. It's titled "Acknowledgment and Waiver of Rights." Have you seen this form? |
| [Dickie:] | Yes, I have. |
| [Judge:] | Are you able to read, write, and understand English? |
| [Dickie:] | Yes, I can. |
| [Judge:] | Mr. Dickie, did you take the time to read over this form? |
| [Dickie:] | Yes, I did. |
| [Judge:] | Were you able to understand all of the rights contained on it? |
| [Dickie:] | Yes, I did. |
| [Judge:] | Is it clear to you, sir, that by entering your plea this morning that you're giving up each and every one of these rights? |
| [Dickie:] | Yes, it is. |

After asking Dickie additional questions about his knowledge of the rights listed in the form and the voluntariness of the plea, the trial judge determined that Dickie freely and voluntarily entered his plea.  (Doc. 13-2 at 279–83)

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).  "Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74.  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.  Because the record demonstrates that Dickie knowingly and voluntarily waived his right to appeal, the post-conviction court did not unreasonably deny the claim. *Thompson v. Wainwright*, 787 F.2d 1447, 1461 (11th Cir. 1986) ("Thompson testified under oath that his plea was not coerced, and the state trial court so concluded.  The district court in effect gave these findings a presumption of correctness.  We see little difference between the presumption of correctness under Section 2254 and the 'strong presumption of verity' identified by the Supreme Court in *Blackledge*.").

At the evidentiary hearing, Dickie testified that he did not sign the letter that explained the consequences of rejecting the prosecutor's plea offer.  (Doc. 13-2 at 1316)  Trial counsel testified that she observed Dickie sign the letter.  (Doc. 13-2 at 1362)  The post-conviction court determined that trial counsel testified more credibly

than Dickie (Doc. 13-2 at 1136), and that credibility determination receives deference in federal court. *Nejad*, 830 F.3d at 1292.

Trial counsel testified that, after the trial judge denied-in-part the motion to suppress, she advised Dickie that "of course, he has the right to appeal [and] [o]bviously, if he wanted to appeal [the order denying the] motion at that given time, there would have to be a stay in the proceedings and things like that . . . ." (Doc. 13-2 at 1358)  Dickie did not have the right to appeal the non-final order. Fla. R. App. P. 9.140(b). *Lopez v. State*, 638 So. 2d 931, 932 (Fla. 1994) ("It is clear that a defendant in a criminal case does not have the right to an interlocutory appeal.").  However, trial counsel subsequently corrected her erroneous advice by presenting to Dickie the letter that explained the consequences of entering the plea. (Doc. 13-2 at 1121)  By signing the letter, Dickie acknowledged that he understood that he waived his right to appeal (Doc. 13-2 at 1121):  "[I]f I decide to enter a plea to the charges in this case, the order denying the motion to suppress my statements in this case will not be appealable as it is not dispositive to my case."[3]

At the evidentiary hearing, the post-conviction court admitted into evidence only a duplicate of the letter that explained the consequences of entering the plea. (Doc. 13-2 at 1316–17)  Trial counsel's supervisor testified that, while closing his office's file for Dickie, his assistant destroyed the original after scanning the original

---

[3] While executing a search warrant at Dickie's home, a detective found sixty-three files that contained child pornography on Dickie's laptop. (Doc. 13-2 at 1026) Records from a property management company confirmed that Dickie lived alone. (Doc. 13-2 at 1033) Even without Dickie's statements, the evidence convincingly proved that Dickie possessed child pornography.

into a computer.  (Doc. 13-2 at 1383–84)  Because the assistant did not destroy the

original in bad faith, a duplicate was admissible to prove that Dickie signed the

original.  § 90.954, Fla. Stat. ("The original of a writing, recording, or photograph is

not required, except as provided in Section 90.953, and other evidence of its contents

is admissible when . . . [a]ll originals are lost or destroyed, unless the proponent lost

or destroyed them in bad faith.").  *Garcia v. Lopez*, 483 So. 2d 470, 471 (Fla. 3d DCA

1986) ("Section 90.954 is broader than Section 90.953 — a copy which is not

admissible under Section 90.953 as a duplicate may still be admissible under Section

90.954.").  Even if the post-conviction court erroneously admitted the duplicate,

Dickie is not entitled to relief in federal court.  *Carroll v. Sec'y, Dep't Corrs.*, 574 F.3d

1354, 1365 (11th Cir. 2009) ("This Court has repeatedly held defects in state

collateral proceedings do not provide a basis for habeas relief.").  *Estelle v. McGuire*,

502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions.").

  Lastly, *Strickland* required Dickie to prove "a reasonable probability that, but

for counsel's errors, he would not have pleaded guilty and would have insisted on

going to trial." *Hill*, 474 U.S. at 59.  Dickie neither swore in his motion for

post-conviction relief (Doc. 13-2 at 728–29) nor testified at the evidentiary hearing

(Doc. 13-2 at 1305–27) that he would insist on exercising his right to trial to preserve

his right to appeal.  Trial counsel testified that Dickie was upset because "he never

really understood why the penalties in these types of cases were so severe." (Doc.

13-2 at 1364)  Trial counsel's supervisor testified that, after he advised Dickie to

proceed to trial if he wanted to preserve his right to appeal, Dickie chose to enter a

plea.  (Doc. 13-2 at 1383)

Because Dickie failed to demonstrate deficient performance and prejudice

under *Strickland*, the post-conviction court did not unreasonably deny the claim.

*Strickland*, 466 U.S. at 687.  Ground One is denied.

### B.  Ground of Prosecutorial Misconduct under *Brady*

**Ground Seven:**

Dickie asserts that the prosecutor violated *Brady* by failing to disclose

documents that demonstrated that the offenses occurred between August 25, 2013,

and February 5, 2014.[4]  (Docs. 26 at 15 and 29 at 10–13)  The post-conviction court

denied the claim as follows (Doc. 28-2 at 87–92) (state court record citations

omitted):

> Defendant contends that the State committed a *Brady*[11]
> violation by failing to disclose during discovery an IP Address
> Tracking Report that provided proof that Sarasota County
> Sheriff's Detective John McHenry falsified dates in the probable
> cause affidavit he submitted to secure a search warrant for
> Defendant's residence, and which resulted in the seizure of
> multiple images of child pornography and Defendant's
> incriminating statements. Defendant claims that, in response
> to two public records requests submitted to the Sarasota County
> Sheriff's Department, in September 8, 2020, and August 25,
> 2021, Defendant received identical IP Address Tracking
> Reports showing that IP Address 174.58.42.2[12] was utilized to
> download files containing child pornography between the dates
> of August 25, 2013, and February 5, 2014. However, Detective

---

[4] "A defendant who pleads guilty waives many, but not all, non-jurisdictional defenses.
In *Matthews*, we declined to decide 'whether a guilty plea waives a defendant's claim under *Brady*, or
— assuming that a *Brady* claim is not waived by a guilty plea — whether the *Brady* material must be
known to the prosecution before the plea or merely before sentencing.'" *United States v. Williams*,
824 F. App'x 750, 755 (11th Cir. 2020) (quoting *United States v. Matthews*, 168 F.3d 1234, 1242
(11th Cir. 1999)).

McHenry averred in the search warrant affidavit that the
downloads occurred between August 25, 2013, and April 28,
2014, which Defendant claims was perjurious and in violation
of Section 933.06, Florida Statutes.[13]

> [11] *Brady v. Maryland*, 373 U.S. 83 (1963).

> [12] Comcast certified that this IP address was
> leased to Defendant at the residence at which the
> search warrant was executed and the
> pornographic material seized.

> [13] Section 933.06, Florida Statutes, provides:
> "The judge must before issuing the warrant, have
> the application of some person for said warrant
> duly sworn to and subscribed , and may receive
> further testimony from witnesses or supporting
> affidavits, or depositions in writing, to support
> the application. The affidavit and further proof, if
> same be had or required, must set forth the facts
> tending to establish the grounds of the
> application or probable cause for believing
> that they exist."

. . .

Defendant's claim cannot succeed on the merits because the
report raises no doubt as to whether the result of the trial
proceedings would have been different. *See Griffin v. State*,
114 So. 3d 890, 904 (Fla. 2013) (*Brady* standard, requiring
showing of reasonable probability of different verdict). The full
IP Address Tracking Report, attached as Exhibit B to
Defendant's motion, shows that Defendant's IP address was
used to download over 1,200 "files" containing images [and]
videos with "hash values" associated with child pornography,
between August 25, 2013, and February 5, 2014.[21] All the
entries in the report fall within the greater time span given by
Detective McHenry in the probable cause affidavit,
commencing August 25, 2013, and ending April 28, 2014.
Those files cited by McHenry as examples of images of child
pornography in the affidavit also appear on the report.

Consequently, the information in the report does not support
the allegation that McHenry willfully gave false testimony
under lawful oath on a material matter in a judicial proceeding.
*See* § 837.02(1), Fla. Stat. *State v. Marlow*, 501 So. 2d 136,
137–38 (Fla. 2d DCA 1987) (*per curiam*). Nor does the report

"weaken the case against [Defendant] so as to give rise to a
reasonable doubt as to his culpability." *Coley v. State*, 74 So. 3d
184, 185 (Fla. 2d DCA 2011) (quoting *Preston v. State*,
970 So. 2d 789, 797 (Fla. 2007) (internal quotation omitted)).
Quite the opposite, it is exceeding[ly] inculpating.

> [21] Some appear to be duplicates of the same file,
> which may account for the reduced 504 "files"
> stated in the search warrant affidavit.

Consequently, the court finds no reasonable possibility that
a *Franks* motion on this ground would have been successful, or
that the information in the report would have caused Defendant
to proceed to trial, given the overwhelming evidence that he
downloaded hundreds of images and videos of child
pornography and faced a potential maximum sentence of
four-hundred-fifty years in prison, if convicted after a trial.

"To establish a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), a criminal

defendant must show (1) that the prosecution possessed evidence 'favorable' to him,

which can include evidence with impeachment value; (2) that he didn't possess the

evidence and couldn't have obtained it with due diligence; (3) that the prosecution

suppressed the evidence; and (4) that, if the evidence had been disclosed to the

defendant, it is reasonably probable that the outcome of his proceeding would have

been different." *Taylor v. Sec'y, Fla. Dep't Corrs.*, 64 F.4th 1264, 1269 (11th Cir. 2023).

"[T]he materiality inquiry, should focus on 'whether the favorable evidence

could reasonably be taken to put the whole case in such a different light as to

undermine confidence in the verdict.'" *Riechmann v. Fla. Dep't Corrs.*, 940 F.3d 559,

580 (11th Cir. 2019) (quoting *Strickler v. Greene*, 527 U.S. 263, 290 (1999)).  "'The

evidence rises to the level of materiality within the meaning of *Brady* when there is a

reasonable probability that, had the suppressed evidence been disclosed, the result of

the proceeding would have been different.'" *Riechmann*, 940 F.3d at 580–81 (citation

omitted).  "In making this determination, [a court] must consider the 'totality of the circumstances' and 'evaluat[e] the withheld evidence in the context of the entire record.'"  *Riechmann*, 940 F.3d at 581 (citation omitted).

Dickie contends that both the prosecutor and a detective suppressed the "IP Tracking Report."  (Doc. 26 at 15)  Dickie attached to his motion for post-conviction relief a public records request that he submitted to the Sarasota County Sheriff's Office for "I.P. tracking records created by utilizing tools developed by ICAC from the date of August 25, 2013, through July 9, 2014, or the last available date."  (Doc. 28-2 at 67)  Also, Dickie attached the "IP Tracking Report" provided by the sheriff's office in response to the request.  (Doc. 28-2 at 24–25, 48–66)  The document lists files that contained child pornography downloaded between August 25, 2013, and February 5, 2014, by a computer connected to the IP address registered to Dickie.  (Doc. 28-2 at 48–66)

In the search warrant affidavit, a detective stated that, between August 25, 2013, and April 28, 2014, a computer connected to the IP address registered to Dickie downloaded 504 files that contained child pornography (Doc. 28-2 at 79):

> On February 5, 2014, using internet tools designed for use by Internet Crimes Against Children investigators, your affiant was able to determine the IP address 174.58.42.2 was utilized to download 504 files possessing hash values previously identified as containers of child pornographic images and videos, between August 25, 2013, and April 28, 2014.

During a deposition, the detective clarified that his forensic investigation began on February 5, 2014, and continued until April 28, 2014 (Doc. 28-2 at 83–84):

- 25 -

| [Trial counsel:] | [N]ow on your, on the affidavit for the search warrant, it says on February 5, 2014, using internet tools designed for use by Internet Crimes Against Children investigators, your affiant was able to determine the IP address 174.58.42.2 was utilized to download 504 files possessing hash values previously identified as containers of child pornographic images and videos between August 25, 2013, and August 28, 2014. |
|---|---|
| [Detective:] | Uh-huh. |
| [Trial counsel:] | My question is on February 5, 2014, how do we know what he was looking at April 28, 2014? |
| [Detective:] | The software we use logs it. It logs the names, IP address, squid, and hash values. |
| [Trial counsel:] | But how, he hadn't, you didn't, on February 5, he hadn't viewed this stuff yet, right? |
| [Detective:] | No, no. This is when I started the case. |
| [Trial counsel:] | Okay. |
| [Detective:] | I mean, this is when we, we started [ ] the review. By the time we wrote, wrote the warrant, which was later, we start here, and we continued to track here. |
| [Trial counsel:] | Okay. I gotcha. Okay. . . . |

At a post-conviction evidentiary hearing, another detective confirmed that the investigation began on August 25, 2013, and continued through April 28, 2014 (Doc. 13-2 at 1338–41):

| [Prosecutor:] | All right. I want to draw your attention to a specific portion of this search warrant. It's — I'm going to be on page one, two, three, and it starts underneath the |
|---|---|

|  |  |
|---|---|
|  | heading: "The following facts support your affiant's probable cause." |
| [Detective:] | Okay. |
| [Prosecutor:] | And starts with on February 5, 2014. Do you see where I'm talking about? |
| [Detective:] | Yes. |
| [Prosecutor:] | Okay. I'm just going to read it and ask you some questions about it. |
| [Detective:] | Okay. |
| [Prosecutor:] | "On February 5, 2014, using internet tools designed for use by the Internet Crimes Against Children investigators, your affiant has been able to determine the IP address 174.58.42.[2] was utilized to download 504 files possessing hash values previously identified as containers of child pornographic images and videos between August 25, 2013, and April 28, 2014." |
|  | How are you able to tell in the future what he's doing? It seems that there's some wording in here that is confusing. |
| [Detective:] | Yes. You can't tell in the future what someone is doing. On February 5, that would have been the date that Detective McHenry had utilized those tools to find out — to identify that this IP address was used to download child pornography. However, at the end, the August 25 through April 28, that encompasses the entire downloading that we identified through the case. So, he didn't — he didn't see on February 5, he saw up to February 5, but the download[s] continued to occur throughout the investigation. |
| [Prosecutor:] | So, may I ask[ ] you, that paragraph, is that an inaccurate statement? In other words, is it false? Was that IP address |

|                 | downloading child pornography from August 25, 2013, through April 28, 2014? |
|-----------------|----|
| [Detective:]    | Yes, it was downloading between August 25, 2013, through April 28, 2014. However, on February 5, it's not going to show obviously in the future. |
| [Prosecutor:]   | Right. |
| [Detective:]    | It was — it was just on February 5, was when he was first identified as a — or he wasn't, the IP address was first identified downloading child pornography. However, the investigation continued, and the downloads were viewed up through April 28, 2018, at 1536. |
|                 | . . . |
| [Prosecutor:]   | Can you tell me how you would have phrased that to be less confusing? |
| [Detective:]    | On February 5, 2014, using internet tools designed for use by Internet Crimes Against Children investigators, your affiant was able to determine the IP address 174.58.42.2 was utilized to download child pornography, period. And then I would have gone on to say that subsequent to the first identification, child pornography or hash values containing child pornography were downloaded by [the] IP address between the dates of August 25, 2013, and April 28, 2014. |
|                 | . . . |
| [Prosecutor:]   | Is there a false statement in this particular paragraph? |
| [Detective:]    | There's no false statements in this paragraph. It's just a little confusing. |

On redirect examination, the detective testified that he reviewed records to

confirm that the computer connected to the IP address registered to Dickie

downloaded files containing child pornography between August 25, 2013, and April 28, 2014 (Doc. 13-2 at 1345–46):

| [Prosecutor:] | Detective, can you explain what you were just about to say about confirming the dates and confirming Detective McHenry's statements or work? |
| --- | --- |
| [Detective:] | Yes. So, the documents that Mr. Scotese had asked to view regarding the downloads, I went back through the tools used by ICAC and our department to find those hash values that were downloading child pornography through that IP address and, as I've said before, they are dated between April 28, 2014, and August 25, 2013. |
| [Prosecutor:] | Is there any way to alter or change that? |
| [Detective:] | There is not. |
| [Prosecutor:] | I think what Mr. Scotese was trying to get at was could Detective McHenry have changed or falsified dates? |
| [Detective:] | No, because I didn't get those from his records. I got those directly from the tool. |
| [Prosecutor:] | Okay. So, from August 25, 2013, through April 28, 2014, there was known child pornography being downloaded by the IP address linked to the Defendant in this case? |
| [Detective:] | Yes. |

In his motion for post-conviction relief, Dickie contended that the

"IP Tracking Report" demonstrates that the downloads occurred between August 25,

2013, and February 5, 2014. (Doc. 28-2 at 25)[5] Dickie concluded that the search

warrant affidavit therefore falsely stated that the downloads continued until April 28,

2014. (Doc. 28-2 at 25, 37)

The record does not contain an "IP Tracking Report" or any other document

that demonstrates that the downloads occurred after February 5, 2014. However,

even if the "IP Tracking Report" demonstrates that Dickie did not download child

pornography after February 5, 2014, and the prosecutor suppressed the "IP Tracking

Report," Dickie fails to demonstrate "'a reasonable probability that, had the

suppressed evidence been disclosed, the result of the proceeding would have been

different.'" *Riechmann*, 940 F.3d at 581 (citation omitted).

On July 8, 2014, the detective signed the affidavit in support of the search

warrant. (Doc. 28-2 at 216–26) On July 9, 2014, the detectives executed the search

warrant at Dickie's home. (Doc. 13-2 at 10) Even if Dickie demonstrated that the

search warrant affidavit falsely stated that the downloads occurred until April 28,

2014, and that the downloads instead occurred until February 5, 2014, probable

cause supported the search of Dickie's home.

"A *Franks* hearing is warranted where a defendant 'makes a substantial

preliminary showing' that an affiant made intentionally false or recklessly misleading

statements (or omissions), and those statements are 'necessary to the finding of

probable cause.'" *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014)

_____

[5] Also, a detective testified at sentencing that the downloads occurred between August 2013 and February 2014. (Doc. 13-2 at 326)

(quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). "'When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false and misleading.'" *Barsoum*, 763 F.3d at 1328–29 (citation omitted). "'The defendant bears the burden of showing that, absent those misrepresentations or omissions, probable cause would have been lacking.'" *Barsoum*, 763 F.3d at 1329 (citation omitted).

*United States v. Touset*, 890 F.3d 1227, 1237–38 (11th Cir. 2018), explains that evidence that a defendant possessed a computer file that contained child pornography rarely becomes stale:

> The "staleness doctrine . . . requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." *Bervaldi*, 226 F.3d at 1264. And the staleness doctrine also applies to reasonable suspicion. *Id.* at 1264–65; *see also United States v. Carter*, 566 F.3d 970, 975 (11th Cir. 2009). "[S]taleness is an issue that courts must decide by evaluating the facts of a particular case . . . ." *United States v. Domme*, 753 F.2d 950, 953 (11th Cir. 1985). Courts consider "the length of time" as well as "the nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Bervaldi*, 226 F.3d at 1265 (citation and internal quotation marks omitted). We have explained that "[t]here is no particular rule or time limit for when information becomes stale." *Id.*
>
> Our sister circuits have repeatedly rejected staleness challenges in appeals involving child pornography. They have observed that "pedophiles rarely, if ever, dispose of child pornography." *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002); *see also United States v. Burkhart*, 602 F.3d 1202, 1206–07 (10th Cir. 2010); *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008); *United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000). And probable cause of involvement in

electronic child pornography remains even longer because
deleted files can remain on electronic devices. *See United States
v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009); *Hay*, 231 F.3d at
636. As the Tenth Circuit explained, "information that a person
received electronic images of child pornography is less likely
than information about drugs, for example, to go stale because
the electronic images are not subject to spoilage or
consumption." *Burkhart*, 602 F.3d at 1207. And other circuits
have ruled that probable cause remained after passages of time
similar to the interval here. *See, e.g.*, *Frechette*, 583 F.3d
at 378–79 (sixteen months); *Morales-Aldahondo*, 524 F.3d at 119
(three years).

The search warrant affidavit states that a computer connected to the IP

address registered to Dickie downloaded 504 files identified as containing child

pornography. (Doc. 28-2 at 218) The detective reviewed a random sample and

determined that fifty-seven of eighty-six image files contained child pornography,

and thirty-six of forty-six video files contained child pornography. (Doc. 28-2 at

219–20) Also, the detective determined that the IP address registered to Dickie's

home address between December 5, 2013, and July 2, 2014. (Doc. 28-2 at 220–21)

The search warrant affidavit explained that a computer stores digital evidence

even after a user deletes the digital evidence (Doc. 28-2 at 223):

> Your affiant knows from training and experience that due to
> the nature of digital evidence, even if efforts are made by the
> user to delete digital information, a computer forensic analyst
> would likely be able [to] locate the deleted and erased
> information in the computer. When a user "deletes" a digital
> file, the file is merely removed from the menu of available files
> that can be seen by the user; however, the digital file remains
> on the user's computer until the space that it occupies is
> overwritten by new data. This overwriting process, depending
> on the use of the computer, can take years to occur. Therefore,
> the mere passage of time, with regards to digital evidence, does
> not mean the evidence will not be found. To the contrary,
> digital evidence is generally maintained and will be found on
> the computer though significant time may have passed.

Even if the search warrant affidavit falsely stated that the downloads occurred through April 28, 2014, instead of February 5, 2014, the remaining evidence demonstrated a reasonable probability that Dickie possessed child pornography on his computer on July 8, 2014, when the detective applied for the warrant. *United States v. Gamory*, 635 F.3d 480, 491–92 (11th Cir. 2011) ("[P]robable cause existed to support the search warrant because the 'totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place.' . . . [E]ven discounting the purported tainted statements, there was still probable cause to support the search for the reasons stated above. As such, no *Franks* hearing was required.").

Also, the information charged Dickie with possessing child pornography on July 9, 2014, when the detective executed the search warrant.  (Doc. 13-2 at 46–53) In the arrest affidavit, the detective stated that, on July 9, 2014, he discovered files that contained child pornography on Dickie's computer (Doc. 13-2 at 10):

> On July 9, 2014, a search warrant was executed at 4036 Crockers Lane Boulevard, Apartment 926, Sarasota, Florida. Detective McHenry conducted a preliminary computer forensic scan of Dickie's computer and obtained a sample of sixty-three images that depicted children involved in oral sex[,] masturbation, [and] vaginal sex, [or] the focus of the image was on the child's genital area in a lewd manner. The children depicted were determined to be less than eighteen years of age due to their childlike-sized arms, legs, [and] torsos, lack of breast development, [and] pre-pubescent state. Many of the image file titles include the term "PTHC" (pre-teen hardcore), [and] the age of the person depicted in the image (*i.e.*, 7yo, 9yo, 11yo, 13yo, *etc.*). A comprehensive exam has not yet been completed, and it is expected that many more images [and] videos will be discovered.

Also, the detective stated that, after the search of the home, Dickie admitted

that he downloaded child pornography (Doc. 13-2 at 11):

> I conducted a post-*Miranda* audio recorded interview with John
> Dickie. During the interview, Dickie admitted to downloading
> child pornography from a file sharing program for the past year.
> Dickie admitted to searching for the child pornography by
> using search term "PTHC," which he described as meaning
> "pre-teen hardcore." Dickie admitted to being the sole person
> to utilize the laptop computer in his apartment, his Wi-Fi
> connection was password protected, and he was the only
> person living in the apartment. Dickie admitted to hav[ing]
> viewed child pornography involving children as young as seven
> [ ]. Dickie said that he downloaded the child pornography for
> masturbatory purposes. Dickie admitted to viewing the child
> pornography as recently as yesterday, July 8, 2014. Dickie
> admitted to knowing what he did was wrong.

Even if the prosecutor suppressed the "IP Tracking Report," the data in the

report does not refute evidence that Dickie possessed child pornography on July 9,

2014, when the detective discovered files containing child pornography on Dickie's

computer.  Also, the information charged Dickie with thirty counts of possessing

child pornography, a second-degree felony punishable by fifteen years in prison.

(Doc. 13-2 at 46–53)  §§ 775.082(3)(d), 775.0847(2), and 827.071(5), Fla. Stat.

Dickie faced four-hundred-fifty years in prison.  (Doc. 13-2 at 185)  Because Dickie

fails to demonstrate a reasonable probability that, if the prosecutor disclosed the

"IP Tracking Report," he would risk four-hundred-fifty years in prison at trial, the

post-conviction court did not unreasonably deny the claim.  *United States v. Walters*,

269 F.3d 1207, 1214 (10th Cir. 2001) ("'In the context of an attack on the validity of

a plea, evidence is considered material [under *Brady*] where there is a reasonable

probability that but for the failure to produce such information the defendant would

not have entered the plea but instead would have insisted on going to trial.'") (citing *United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998)).  Ground Seven is denied.

## VI.  CONCLUSION

Dickie's second amended application for a writ of habeas corpus (Doc. 26) is **DENIED**.  The clerk must enter a judgment against Dickie and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Dickie fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would debate either the merits of the grounds or the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  Dickie must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on April 17, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE